[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a post judgment matter in which the defendant seeks to enjoin the plaintiff from relocating the minor children, issue of the dissolved marriage, to ew Hampshire (#121). CT Page 14041
The parties married on June 1, 1985. There are two minor children. Daniel (4/1/90) and Elizabeth (11/14/91) issue of the union The marriage was dissolved on April 26, 1999 (Frankel, J.). At the time of the dissolution, the parties entered into Separation Agreement (#114) which was incorporated into the judgment by reference.
The judgment provided for joint legal custody with primary residence being with the plaintiff. (Article II, 2.1).
The parties were detailed and expansive in spelling out a complete sharing of the important, major, custodial functions (Article II,Custody, etc. of the Children, Child Support and Education).
In Article II, 2.10, the parties limited the plaintiff's ability to relocate by requiring advance notice, negotiation and, failing agreement, court submission. The parties established that the relocating party ". . . shall bear the burden of proving that the proposed relocation is in the best interests of the minor children. "
This recitation of burden of proof and limitation of the issue to ". . . the best interests of the minor children . . ." could be read as an attempt by the parties to limit the applicability of Ireland v. Ireland,246 Conn. 413 (1998), since the agreement post-dated the decision. TheIreland court did not limit relocation considerations to a "best interest" standard. Rather, the court established the following decision making criteria:
1) Each parent's reasons for seeking or opposing the move;
 2) the quality of the relationships between the child and the custodial and non-custodial parents;
 3) the impact of the move on the quantity and quality of the child's future contact with the non-custodial parent;
 4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move;
 5) the feasibility of preserving the relationship between the non-custodial parent and child through suitable visitation arrangements;
 6) the negative impact, if any, from continued or exacerbated hostility between the custodial and non-custodial parents; and CT Page 14042
 7) the effect that the move may have on any extended family relationships. Ireland 431, 432.
The logical assessment of all the Ireland factors is detailed and may, arguably, require fore than an examination limited to the "best interests" standard. This court believes that, in the absence of some more definitive legislative or appellate definition of the ambiguous "best interests", the result of a complete application of the Ireland
factors must yield the answer to What is in the best interests of the DiCarli children.
The Ireland court also established a burden of proof which the judgment in the instant matter attempts to alter. Ireland directs ". . . the non custodial parent opposing the proposed relocation should be required to prove that the relocation is not in the child's best interests . . ."Ireland, 426. This is the opposite of the agreement of the parties; ". . . the relocating party shall bear the burden of proving that the proposed relocation is in the best interests of the minor children. . ." Article II, 2.10.
It would appear that this court must first decide whether in agreement between the parties. post dating the Supreme Court decision, can effect a change which would alter and/or supercede the Court's directives.
However, after careful consideration this court has concluded that it need not resolve the apparent conflict. The reason for this resolution, is the inevitable outcome; the defendant prevails under either standard.
 I. Facts
The parties married on June 1, 1985 having cohabited for approximately three years before the wedding. From the time of the birth of each child, the mother was the dominant parent. This was to some degree natural motherly activity and may have been, unconsciously, an attempt to limit the development of closeness with the father.
During the divorce process, the children were not trusting of their paternal relationship. For example overnight visitations presented problems.
After the dissolution, the mother and children all moved into one bedroom available I for occupancy in the maternal grandparents home. Two adult maternal uncles and both grandparents also reside in this home. CT Page 14043
Noting that there was a significant cash distribution to the wife, as part of the dissolution, she obviously had the wherewithal to. at least, closely examine the availability of more suitable housing in the immediate vicinity.
At best the plaintiff's efforts to find appropriate housing for two growing children were tepid. It is rather patent that the wife never honestly intended to try and remain in this vicinity.
The credible evidence demonstrates that the wife acquired a New Hampshire home in October 1999. The wife intentionally concealed this fact from the husband. It was not until April 2000 that the husband learned of the New Hampshire home from the children.
By the time the father heard about New Hampshire, the plaintiff had already planted all the seeds in the children's world to make any opposition to the move very difficult. Both children had been regularly brought to New Hampshire, allowed to decorate individual bedrooms and hearing constant praise about the new life style. Each child was assured the relocation was a fact accompli. All this before any discussion with the father.
It was credibly proven that throughout the divorce and post-divorce process mother regularly discussed adult/court issues with the children. As always, this method of litigation activity is improper, harmful and manipulative.
It is clear that mother's conscious goal was to manipulate the children into yearning for relocation, before the court and/or the professionals could assess the proposed move. All available testimony demonstrates that mother's secretive and seductive efforts worked. The children really believe they want to move. They had been trained to feel the desire to move before appointment of their counsel, their guardian and/or examination by Family Relations.
Mother's repeated exercise of bad judgment (choice of inappropriate living arrangements for too long, failure to honestly and openly communicate about relocation possibility with husband (in a timely fashion). manipulation of the children in a secretive fashion and involving children in adult/court issues) weighs heavily against the mother's desire to relocate)).
Mother asserts the following reasons for her desire to relocate:
a) She feels comfortable in New Hampshire; CT Page 14044
b) the new neighborhood is a "good neighborhood";
c) she can "afford" to raise the kids;
d) extra curricular activities are cheaper;
e) she can go to school, move conveniently, to achieve advanced education; and
f) her parents are relocating to New Hampshire.
The only evidence offered in support of her claimed benefits of the move was her own testimony unsupported by any serious documentation.
 II.
The father, admittedly, had a cool and somewhat removed relationship with the children during the marriage and through the divorce.
According to the mother, the children, the guardian, the counsel for the children and the Family Relations Officer this has changed drastically since the divorce. As mother said ". . . kids relationship with the father has never been better . . ." He has cooperated fully in all counseling efforts.
The father is employed in a responsible position at People's Bank and regularly meets I all his financial obligations. He is now involved in a cohabiting relationship with a woman and her teenage son. Father credibly testified that the home is a warm environment, with good relations between the children, his significant other and her son. A marriage is planned in the not too distant future.
Father does not and has not discussed the adult/litigation issues with the children. (This assertion and its counterpoint, mother's regular discussions of such issues with the children, is supported by the findings of the professionals involved in assessing this matter).
The credible evidence demonstrates that father's improved relationship, now close and important, with the children is attributable to:
 a) exposure with unencumbered contact (without maternal and maternal grandparental involvement) has allowed for open and useful father-child dealings;
b) the development of a child-paternal grandfather relationship CT Page 14045 (without maternal relations interference);
 c) a serious paternal commitment to counselling and paternal learning of parenting and communication skills; and
 d) the child development which occurs when they are away from the custodial residence.
Currently, father is completely involved in the lives of the children. The proximity of living places allows constant contact and paternal involvement in day to day activities. When there are activities, during part of the work day, father can often make arrangements to leave work and participate. When games or other events occur over weekends, when he is not the visitation parent, he can still attend and participate.
The credible evidence that father did not regularly receive constant and complete health. education and religious information from the mother, until this proceeding, mitigates strongly in his favor; correspondingly in light of the court's findings concerning wife's secretive and manipulative behavior also mitigates in father's favor.
The unrefuted testimony that, up to and including this proceeding, father's requests, on occasion, for expanded visitation for some given purpose were greeted by mother with "let's abide by the agreement" (without explanation or justification) mitigates in father's favor.
Father proved that mother conducts herself as if he is, something she has to deal with, not an equal parent, not entitled to full and open communication concerning the children, not to be completely involved in the children's lives and to be alienated out of the children's lives as quietly as possible.
 III
It is patent to this court that there has been serious effort by father to adapt to divorce and foster a two parent system. Similarly, it is patent that mother cooperates when it achieves her ultimate goal of self-satisfaction, without regard for the impact on the paternal/child relationship.
The only fact proven in support of mother's desire to move is that the children want to move. That state of affairs is solely attributable to her manipulation.
Every other proven fact demands that the children remain in Connecticut, within fifteen (15) miles of Trumbull Town Hall. CT Page 14046
 Findings
1) Mother has not met the burden of the judgment to prove that the proposed move is in the best interests of the children.
2) There is no demonstrated legitimate reason for the move.
3) The mother's reasons for the move are unsupported and are, demonstrably, for alienation reasons.
4) In event of relocation, the quality of the relationship between children and father will be permanently damaged by allowing relocation. (The mother can choose to continue to manipulate the children into paternal separation, to their detriment, or foster the wonderful prospect of participating in the proof that children of divorce can have improved relationships with each parent).
5) There is no credible evidence that the children's economic opportunities will be improved by relocation. There is evidence that father contributes, appropriately, outside of court orders to the needs of the children. Mother presented no believable evidence that her educational advancement was not available here. Further, she presented no evidence about her earning capacity, now, after a New Hampshire education, after a Connecticut education or in my other setting.
6) All available, reliable, evidence demonstrates that the lives of these children will be enhanced emotionally, (especially if mother honestly remotivates herself to the best interests of the children, rather than self-desire) if they continue to have a complete relationship with their father and paternal grandfather.
7) There is no evidence that there is any childrens' educational enhancement available if relocation occurs.
8) There is no evidence that the relationship between children and father can be appropriately maintained if relocation is allowed. These children approach the teen years. Thus. as ususal, they will have more personal relationships and activities which attract their interest. It is normally a hard time to maintain child/parent relationships. To add two and one-half hours of travel to see a home run, a dance success or they explanation of a poor grade can do nothing but harm the relationship between this father and his children.
9) The mother has consistently demonstrated no willingness to cooperate in fostering and expanding the relationship between the children and CT Page 14047 their father. Of more concern and worthy of immediate change is the mother's:
 a) refusal to be completely open and communicative
at her initiation, about everything in the lives of their children; and
 b) her willingness to discuss adult/court issues with the children at her initiative.
10) There is no evidence that the failure to move will adversely impact the relationship with the maternal grandparents.
11) There is no credible evidence that there will be any adverse impact on extended family relationships if the relocation does not come to pass.
12) There is rather complete evidence that the impact of this decision on the children can be impacted by mother's approach, attitude and behavior.
 Orders
1) Defendant's Motion to Enjoin (while not procedurally correct under the normal standards of injunction, but clearly correct in intent (in light of the existing family relations statutes Judicial precedent and judgment in the captioned matter) is granted.
2) The plaintiff wife may not residentially relocate the minor children outside of any area further than fifteen miles. Absent prior court approval, at her initiative, plaintiff may take no action to relocate in a way which would change the children's current school assignments And the natural progression through that system.
3) Absent defendant's written agreement, the children may not be taken out of Connecticut. in any manner, or at any time, which would result in a absence from school.
4) Within thirty (30) days of this decision, the plaintiff-wife will write and deliver (with copies to the defendant) letters to the following, directing that they provide, on a regular and timely basis, any and all reports concerning attendance, performance, demands, needs, recommendations diagnoses, meetings and/or suggestions concerning either child, to the defendant. (In addition, the wife shall direct each recipient to call the defendant at any time a call to her is deemed appropriate). CT Page 14048
A) Home Room Teacher;
B) Principal;
C) Any and all M.D.'s or other health care providers servicing the children;
D) Any and all dental servicing providers for the children; and
 E) Any all mental health providers, counselors or similar service providers assisting the children.
While not specifically raised by the proceedings before this court, the court is ever mindful of the need to be concerned concerning the welfare of the children and the complete equitable nature of proceedings before it.
This court specifically finds that the defendant has met his non custodial parent burden to resolve each and every Ireland criteria in his favor. Further, the defendant has proven that the `best interests' of the children are fulfilled by ensuring their continuing local residence.
The court's decision is made upon the defendant/s proof, without any burden on plaintiff.
 Commentary
The court has carefully listened to multiple professional recommendations about the issues to be addressed in the final decision. The common recommendation. regardless of outcome, is that the court enter a complicated series of orders controlling communication with the children. The further recommendation is that the court mandate certain counselling activities for the parents and the children.
This court notes that in this matter it has been assisted by extraordinarily devoted and capable people (Attorney Barbara Binford, Counsel for the children, Attorney Bonnie Amendola, Guardian for the children, and Ms. Leah Martin Fucci, Family Relations Counselor)[1].
Though some of these advisors have advised the exercise of supervisory activities over the implementation of this decision, this court declines to do anything except rule on the matter legally presented for consideration.
The court notes that the evidence presented led to the conclusion, CT Page 14049 under two standards, that Daniel and Elizabeth should not relocate. This does not vest the court with some unvested authority to go further.
It is absolutely clear that the parents should discuss the outcome of this decision, with the goal of complete family acceptance, asserting at all times that it is the best outcome for all. Any and all concept that father created a bad outcome should be destroyed. (Mother should seek help (before revealing the outcome) to define this decision as the right outcome for all).
The Guardian Ad Litem, the Counsel for the children and the Family Relations Officer should all be available as resources for plaintiff and defendant to communicate this decision to the children.
Despite the multiple requests this court has no authority to do other than rule on the matters presented. The court has done that; the children may not be relocated.
The court hopes that the adult parties will use its recognition of a lack of authority/jurisdiction to mandate counselling activities and other intrusions in the parenting process as an opening to the importance of seeking new and innovative assistance in further developing wonderful children.
The Court,
Daniel E. Brennan, Jr., Judge